# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**WEST VIRGINIA PARKWAYS AUTHORITY,**
**Employer Below, Petitioner**

**FILED**
**January 29, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 24-ICA-292**          (JCN: 2023020064)

**DAINEL SMITH,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner West Virginia Parkways Authority ("WVPA") appeals the June 17, 2024, order of the Workers' Compensation Board of Review ("Board"). Respondent Dainel Smith filed a response.[1] WVPA did not reply. The issue on appeal is whether the Board erred in reversing the claim administrator's order, which closed the claim for temporary total disability ("TTD") benefits.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the Board's decision but no substantial question of law. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure for reversal in a memorandum decision. For the reasons set forth below, the Board's decision is reversed.

On April 24, 2023, while working for WVPA, Ms. Smith injured her right ear when she put an earpiece in her ear and was shocked. Ms. Smith was seen at Raleigh General Hospital on April 25, 2023, with complaints of an injury to her right ear the previous day at work. Ms. Smith reported that she was at work and was wearing a wired earbud to communicate with coworkers and the earbud caused a shock to her ear. Ms. Smith further reported decreased hearing at that time, which was even greater when she woke up that morning. The assessment was right-sided tympanic membrane ("eardrum") rupture.

Ms. Smith submitted an Employees' and Physicians' Report of Occupational Injury or Disease ("WC-1") form dated April 25, 2023. Personnel at Raleigh General Hospital signed the WC-1 form on the same day. The diagnosis was identified as right tympanic

---

[1] WVPA is represented by James W. Heslep, Esq., and Steven K. Wellman, Esq. Ms. Smith is represented by Reginald D. Henry, Esq., and Lori J. Withrow, Esq.

membrane rupture. The form did not indicate that Ms. Smith needed to remain off work for four or more days.

On May 10, 2023, Ms. Smith was seen by David Blaine, M.D. Ms. Smith denied any dizziness or vertigo and said she was told that she had no infection. Dr. Blaine assessed ear problem; otitis media, right, acute; disorder of right eustachian tube; sensorineural hearing loss ("SNHL"), unilateral, left ear with restricted hearing on the contralateral side, acute; mixed conductive and sensorineural hearing loss, unilateral, right ear with restricted hearing on the contralateral side, acute; and otalgia ("ear pain"), right ear, acute. Dr. Blaine opined that Ms. Smith had mild hearing loss in the left ear and severe hearing loss in the right ear and due to fluid, there was a conductive air-bone gap of about 40 decibels. The claim administrator issued an order, dated May 12, 2023, which held the claim compensable for a right ear injury.

Ms. Smith was examined by Lora Fisher, NP, on May 18, 2023. Ms. Smith reported right ear pain, difficulty hearing, tinnitus, frequent severe headaches, anxiety, fatigue, and sinus pressure. NP Fisher assessed hearing difficulty, and she recommended a referral to audiologist for hearing aids and tinnitus of right ear. NP Fisher issued a work excuse dated May 18, 2023, indicating that Ms. Smith was unable to work from May 15, 2023, through May 21, 2023, and could return to work on May 22, 2023. On May 22, 2023, Ms. Smith followed up with NP Fisher. NP Fisher indicated that Ms. Smith had middle ear fluid with scarring to the right eardrum with a small bulge in the center. NP Fisher also found scarring on the left eardrum. The assessment was otalgia right ear, tinnitus of right ear, and hearing difficulty. A Workers' Compensation Attending Physician's Report was completed on May 22, 2023, which indicated that Ms. Smith's return to work date was July 2023. On May 24, 2023, Dr. Blaine examined Ms. Smith and released her to return to work on May 25, 2023, with no restrictions.

On June 22, 2023, Joseph Touma, M.D., examined Ms. Smith. Ms. Smith reported long-standing hearing loss with hearing aids as a child and right sided mild otalgia. Ms. Smith indicated that she did not wear hearing aids now. Dr. Touma's assessment was asymmetric SNHL, speech delay, right otalgia, long-standing and documented hearing loss; however, the asymmetry was more pronounced.

Ms. Smith was seen by Joshua Boggs, M.D., on June 30, 2023. Ms. Smith reported that she was shocked by a headpiece multiple times at work and was told she had a ruptured eardrum at the ER. Dr. Boggs noted scarring likely from a prior rupture. Ms. Smith reported pain with loud noises and in loud environments. She stated that she wanted to go back to work but was limited by pain. The assessment was otalgia of the right ear and dysfunction of right eustachian tube. Ms. Smith followed up with Dr. Boggs on August 15, 2023. Ms. Smith reported that she continued to have right ear pain radiating down the neck. Physical examination of the ears showed scarring and retraction of the right eardrum. The

2

assessment was otalgia of right ear and hearing loss, bilateral, long-standing but worse on the right now. A Workers' Compensation Attending Physician's Report was completed on August 15, 2023, which indicated that the accepted diagnosis was otalgia. Ms. Smith's restrictions were that she could not tolerate loud noise at work. Dr. Boggs indicated that Ms. Smith was disabled from work from April 24, 2023, through September 15, 2023.

David Phillips, M.D., an ear, nose, and throat specialist, evaluated Ms. Smith and issued a report dated January 9, 2024. Ms. Smith reported a persisting sense of discomfort and pain in that region as well as a sensation of diminished hearing. Dr. Phillips noted a history of hearing loss that had been long-standing as well as a history of wearing hearing aids as a child, but no recent use of hearing aids. Dr. Phillips stated that the mechanism of injury was very unusual, and it was difficult to state with certainty how she would have sustained any significant electrical injury from a walkie-talkie headset. Dr. Phillips opined that it was very unlikely that the workplace injury directly caused the bilateral SNHL as it was preexisting and would be very unlikely to exacerbate right sided eustachian tube dysfunction. Importantly, Dr. Phillips opined that the medical treatment rendered since the alleged injury was directed at relief of eustachian tube dysfunction and the right middle ear effusion was likely unrelated to the workplace injury. Dr. Phillips placed Ms. Smith at maximum medical improvement ("MMI").

On February 8, 2024, Ms. Smith was deposed. Ms. Smith described the injury as occurring when she had just gotten back from lunch, clocked in, and went to put her headset in her ear for her walkie-talkie that they used to communicate. Ms. Smith stated that when she took her coat off, it shocked her five or six times in the right ear all the way down to the bottom of her tonsils. Ms. Smith testified that she started choking, had a burning sensation, and a sharp pain. Ms. Smith indicated that she tried to continue her day of work, but her symptoms kept getting worse as the day progressed. Ms. Smith testified that when she hears a sound and it hurts, it is like a sharp jabbing with a needle, and she is not able to handle the noise at work. Ms. Smith further testified that she had preexisting hearing loss, and she had previously worn hearing aids.

Debra Farley, Human Resources Director for WVPA, signed an affidavit on March 18, 2024. Ms. Farley stated that WVPA was willing to allow Ms. Smith to work modified hours and/or night shifts, which would involve minimal to no noise, and that the night shift position would not involve the use of an earphone for communications. Ms. Farley further stated that Ms. Smith declined this offer on June 12, 2023.

On June 17, 2024, the Board reversed the claim administrator's order, which closed the claim for TTD benefits. The Board found that the medical evidence establishes that Ms. Smith was TTD from May 1, 2023, through September 15, 2023. The employer now appeals the Board's order.

3

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

WVPA argues that the evidence establishes that Ms. Smith was not only offered a job within her physician's restrictions, but her ongoing issues were unrelated to the compensable injury. WVPA further argues that Ms. Smith has been released to return to work with restrictions, and the Board was incorrect to find she was entitled to temporary total disability benefits merely because the record was void of evidence establishing a finding of MMI. We agree.

West Virginia Code § 23-4-7a (e) (2005) provides:

> [n]otwithstanding any provision in subsection (c) of this section, the commission, successor to the commission, other private carrier or self-insured employer, whichever is applicable, shall enter a notice suspending the payment of temporary total disability benefits but providing a reasonable period of time during which the claimant may submit evidence justifying the continued payment of temporary total disability benefits when: (1) The physician or physicians selected by the commission conclude that the claimant has reached his or her maximum degree of improvement . . . . In all cases, a finding by the commission, successor to the commission, other private carrier or self-insured employer, whichever is applicable, that the claimant has reached his or her maximum degree of improvement terminates the claimant's entitlement to temporary total disability benefits regardless of

4

whether the claimant has been released to return to work. Under no circumstances shall a claimant be entitled to receive temporary total disability benefits either beyond the date the claimant is released to return to work or beyond the date he or she actually returns to work.

Here, the Board found that the medical evidence established that Ms. Smith remained temporarily and totally disabled from May 1, 2023, through September 15, 2023, because she had not been found to be at MMI. The Board noted that Ms. Smith had received a job offer from WVPA on June 12, 2023, which offered Ms. Smith a quiet work environment; the Board relied heavily on the fact that the job offer was not in writing to determine that it was not adequate.

Upon review, we conclude that the Board was clearly wrong in finding that Ms. Smith remained temporarily and totally disabled from May 1, 2023, through September 15, 2023. We further find that the Board was clearly wrong to disregard the fact that Ms. Smith was released to return to work on May 25, 2023, with no restrictions. However, we note that Dr. Boggs only indicated that Ms. Smith required a quiet environment for work. Thus, we find that the Board was clearly wrong to disregard the undisputed fact that on June 12, 2023, WVPA made a job offer to Ms. Smith, meeting her work restrictions of a quiet environment, and Ms. Smith declined that job offer. We find nothing under current West Virginia law that requires a job offer made to a claimant be in writing.

The Board also relied on the fact that Ms. Smith had not been found to be at MMI to determine that she continued to be temporarily and totally disabled. However, West Virginia Code § 23-4-7a(e) provides that TTD benefits end either at a finding of MMI or when the claimant is either released to return to work or does return to work; the law does not require both. Ultimately, we find that the evidence does not establish that Ms. Smith continued to be temporarily and totally disabled beyond June 12, 2023, when she was offered a job within in her work restrictions.

Accordingly, we reverse the Board's June 17, 2024, order.

Reversed.

**ISSUED:** January 29, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear

Judge S. Ryan White, not participating

5